## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTWAN RUSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:15-cv-01619-TWP-DKL |
| | ) |
| MATTHEW VAN DINE, | ) |
| | ) |
| Defendant. | ) |

### ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT
### AND DIRECTING ENTRY OF FINAL JUDGMENT

Plaintiff, Antwan Rush ("Rush"), filed this action on October 13, 2015, contending that his constitutional rights were violated while he was incarcerated in the Indiana Department of Correction ("IDOC"). Specifically, Rush alleges that Defendant Correctional Sergeant Matthew Van Dine ("Van Dine"), used excessive force against him on June 1, 2015, in violation of the Eighth Amendment. Van Dine seeks summary judgment in his favor arguing that Rush failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.

For the reasons explained below, Van Dine's Motion for Summary Judgment (Filing No. 11) is **granted.**

### I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which

"demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

## II. DISCUSSION

### A. Undisputed Facts

At all times relevant to his Complaint, Rush was confined by the IDOC at Pendleton Correctional Facility ("Pendleton"). The IDOC has a Grievance Process which is intended to permit inmates to resolve concerns and complaints related to their conditions of confinement prior to filing suit in court. Through the Grievance Process, offenders can grieve matters that involve the actions of individual correction officers.

As an inmate at Pendleton, Rush had access to the Grievance Process. The purposes, rules, and procedures of the Grievance Process are set forth in Offender Grievance Process, Policy, and Administrative Procedure 00-02-301. All offenders are made aware of the Grievance Process during orientation and a copy of the Grievance Process is available in the law library.

The Grievance Process consists of three steps. It begins with the offender contacting staff to discuss the matter or incident subject to the grievance and seeking informal resolution. If the

offender is unable to obtain a resolution of the grievance informally, he may submit a Level I formal grievance to the Grievance Officer of the facility where the incident occurred. The formal grievance is required to identify the issue that the offender is trying to resolve. If the offender is not satisfied with the facility's decision on his formal grievance, he is required to file a Level II grievance appeal.

Rush's grievance history reflects that he has not filed a formal grievance. This is because Rush's attempt at formally grieving the June 1, 2015, incident was rejected. The rejection was based on the remedy Rush requested. The grievance states: "I would like the disorderly conduct be expunged and the officers involved disciplined" as the relief sought. (Filing No. 15-3.)

This rejection was consistent with policy. The Grievance Process states "[n]o grievance shall be rejected because an offender seeks an improper or unavailable remedy, except that a grievance shall be rejected if the offender seeks: … B. A remedy for an error allegedly occurring during a disciplinary proceeding… D. Staff discipline, job reassignment, and/or training." (Filing No. 13-2 at p. 8.)

After Rush's attempt at formally grieving was returned, he did not resubmit the formal grievance form. At the bottom of the Return of Grievance form, it states "[i]f you choose to correct the problem(s) listed above, you must do so and re-submit this form within 5 working days." (Filing No. 15-2.)

Exhaustion of the grievance procedure requires pursuing a grievance to the final step.

**B.     Exhaustion**

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions.  42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (*quoting Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).  Strict compliance is required.  *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006).  The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions.  *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required.").

**C.     Discussion**

Van Dine argues that Rush failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims.  Rush disputes this argument by providing copies of an informal grievance and a formal grievance that was submitted but rejected because of the relief sought.  In reply, Van Dine agrees that Wayne Scaife, the Grievance Specialist at the time, returned the Level I formal grievance to Rush because Rush asked for remedies that were not available through the Grievance Process.  Van Dine argues that Rush failed to exhaust his administrative remedies because he did not correct the problems with the formal grievance form

4

he attempted to file.  Van Dine contends that Rush was required to correct and resubmit his formal grievance and if Rush was not satisfied with the facility's response to the formal grievance, he would have been required to appeal before his available administrative remedies could be considered exhausted.

Van Dine is correct.  Rush was required to exhaust his administrative remedies even if the relief he sought was unavailable.  This issue was resolved by the Supreme Court in *Booth v. Churner,* 532 U.S. 731 (2001).  In *Booth,* the Supreme Court held "that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  532 U.S. at 742 n. 6.  In other words, a remedial scheme is "available" where "the administrative process has authority to take some action in response to a complaint," even if it is "not the remedial action an inmate demands to the exclusion of all other forms of redress."  *Id.* at 736.  This is because "the requirement of exhaustion is intended primarily for the benefit of the prison rather than the prisoner."  *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1174 (7th Cir. 2010).  The prisoner "may not circumvent the requirement of exhaustion by picking out a remedy that the prison happens not to offer and contending that its absence entitles him to bypass the administrative grievance procedure."  *Id.*

Accordingly, Van Dine has met his burden to prove that Rush failed to exhaust his available administrative remedies as required by the PLRA before filing this lawsuit. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Rush's action should not have been brought and must now be dismissed without prejudice.  *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

5

### III.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Filing No. 11) is **GRANTED**.  Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date:  7/27/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Antwan Rush, #139414
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana  46064

Rebecca A. Brelage
OFFICE OF THE INDIANA ATTORNEY GENERAL
rebecca.brelage@atg.in.gov

Robert C. Allega
OFFICE OF THE INDIANA ATTORNEY GENERAL
robert.allega@atg.in.gov